**Tysheem CROCKER, Appellant**

v.

**Edward KLEM; District Attorney of York County, Pennsylvania.**

No. 09–1112.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 23, 2011.

Filed: Nov. 4, 2011.

Joseph R. Viola, Esq., Padova & Lisi, Philadelphia, PA, for Appellant.

Francis R. Filipi, Esq., Office of Attorney General of Pennsylvania, Harrisburg, PA, H. Stanley Rebert, Esq., Jeffrey F. Boyles, Esq., Office of District Attorney of York County, Francis R. Filipi, Esq., George N. Marros, Esq., York, PA, for Appellees.

Before: FISHER, HARDIMAN and GREENAWAY, JR., Circuit Judges.

OPINION OF THE COURT

FISHER, Circuit Judge.

Tysheem Crocker appeals from the District Court's denial of his petition for writ of habeas corpus. For the reasons stated

below, we will affirm the District Court's order.

## I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On October 5, 1997, two rival New York gangs, the Cream Team and the Gods, engaged in an altercation on Maple Street in York, Pennsylvania. Tysheem Crocker ("Crocker") was the leader of the Cream Team, and his co-defendant Melvin Bethune ("Bethune") was a member of the same. Kendu Smith (also known as "Do–Work") was the leader of the Gods. After a physical altercation between Bethune and a member of the Gods, Crocker and Bethune drove to New York City to gather three other co-conspirators, including "Corleone," to retaliate against the Gods. They met up with Danny Steele ("Steele"), another member of the Cream Team, at a laundromat between Queen Street and Maple Street in York before proceeding to a Super 8 Motel to plan the assault. Crocker rented the motel room under the name Shondell Shamble.

According to Steele, who testified on behalf of the Commonwealth of Pennsylvania ("Pennsylvania") at Crocker and Bethune's trial, the group discussed retaliating against Do–Work and anyone who was with him. The group then drove to retrieve guns that were stored in a house located on Maple Street and proceeded to the corner of Maple Street, where Do–Work was playing dice with a number of people, including Raymond Clark ("Clark"). Crocker confronted Do–Work and drew his machine gun, but when he attempted to fire his gun, the gun jammed. Immediately thereafter, one of the unnamed co-conspirators from New York discharged his firearm, which caused the remaining Cream Team members to open fire on the Gods and other people playing dice. Crocker and his co-conspirators chased after various individuals. Corleone, Steele, and an unnamed co-conspirator ran in Clark's direction. Corleone shot Clark twice and killed him.

Police officers conducted an investigation, focusing on Crocker, Steele, and Bethune. Steele pled guilty to conspiracy to commit murder in return for unspecified consideration by Pennsylvania. Corleone was never apprehended. On January 19, 1998, Crocker was arrested in New York, at which time he gave the name Shondell Shamble to the arresting officers. Crocker's case was consolidated with Bethune's case, and Steele testified on behalf of Pennsylvania at their trial. On January 15, 1999, Crocker was found guilty of first-degree murder and criminal conspiracy. He was sentenced to life imprisonment for the murder conviction and to a concurrent twenty-to-forty-year term of imprisonment for the criminal conspiracy conviction.

After his conviction and sentence were affirmed on direct appeal, Crocker filed a pro se Post Conviction Relief Act (PCRA) petition under 42 Pa.C.S.A. §§ 9541–9546. Counsel was appointed, and the petition was denied on March 2, 2001. Crocker's PCRA counsel failed to file a direct appeal, so Crocker was granted leave to file an appeal nunc pro tunc. But PCRA counsel still failed to file the appeal, so pursuant to a second PCRA petition filed by Crocker, new counsel was appointed. On August 15, 2001, a direct appeal was filed from the denial of his first PCRA petition but was denied. On May 15, 2003, Crocker filed his third PCRA petition, which the PCRA court dismissed as untimely. In the meantime, Crocker timely filed a petition for writ of habeas corpus in the District Court on September 29, 2003. On May 11, 2004,

the Superior Court of Pennsylvania affirmed the PCRA court's dismissal of Crocker's third PCRA petition. On May 24, 2004, the District Court stayed his habeas corpus petition to allow Crocker to exhaust state court review of his claims. On December 9, 2008, the District Court denied Crocker's petition for habeas corpus. Crocker timely appealed the District Court's order.

## II.

The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 2241, and 2254. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253.

## III.

### A.

Crocker submits that trial counsel rendered ineffective assistance by failing to investigate the prosecution's contention that Crocker rented a Super 8 Motel room the night of the murder and used that room to plan the murder conspiracy. He argues that the District Court erred by not granting an evidentiary hearing regarding this claim in light of newly discovered evidence. We disagree. The District Court properly declined to address the merits because Crocker procedurally defaulted on this claim due to a state procedural bar.

All claims that a petitioner in state custody attempts to present to a federal court for habeas corpus review must have been fairly presented to the state court. *See* 28 U.S.C. § 2254(b). Thus, with limited exceptions, "federal courts refrain from addressing the merits of any claim raised by a habeas petitioner that was not properly exhausted in state court." *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir.2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Claims "deemed exhausted be-

cause of a state procedural bar are procedurally defaulted, and federal courts may not consider their merits unless the petitioner establishes cause and prejudice or a fundamental miscarriage of justice to excuse the default." *Id.* at 160 (internal citations and quotations omitted).

Crocker raised this claim based on newly discovered evidence for the first time when he appealed the PCRA court's dismissal of his third PCRA petition to the Pennsylvania Superior Court. Under Pennsylvania law, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.App. P. 302(a). Thus, the Pennsylvania Superior Court held that Crocker's ineffective assistance of counsel claim was waived on appeal because Crocker failed to raise it in his PCRA petition for the PCRA court to review. *Pennsylvania v. Crocker*, 855 A.2d 129 (Pa.Super.2004). When a state law bars a petitioner from seeking further review of his claims in state court, the claims are procedurally defaulted. *Lines*, 208 F.3d at 160. Thus, we may not review this procedurally defaulted claim unless Crocker establishes cause and prejudice or a fundamental miscarriage of justice to excuse the default. *Id.* at 159.

Crocker fails to show cause and prejudice to overcome this procedural default. To show "cause," Crocker must demonstrate that "some objective factor external to [him] impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 479, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Once he establishes cause, Crocker must then show prejudice that "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494, 106 S.Ct. 2639 (emphasis and citation omitted). He argues that as soon as he was in possession of the newly discovered evidence, he properly

filed a Motion to Remand in the Pennsylvania Superior Court, where the dismissal of his third PCRA petition was under review.

However, this is insufficient to establish that some objective external factor impeded him from raising this claim earlier in his PCRA petition. Crocker was aware that new evidence might surface regarding the timing of his motel check-in when he raised the issue in his first PCRA petition on September 14, 2000. A private investigator's letter to Crocker dated December 2, 2002, indicates that Crocker was pursuing information regarding the date and time he checked into the Super 8 Motel well before he filed his third PCRA petition on March 15, 2003. After Crocker's attorney filed a subpoena duces tecum to obtain the guest and employee records for October 5 and 6, 1997, as well as a copy of the Super 8 Motel's check-in policy, Crocker received the pertinent information on May 16, 2003, one day after he filed his third PCRA petition. As Crocker asserts, "his initial PCRA proceedings, at which he was represented for the first time by counsel other than trial counsel, ... presented the first opportunity for Crocker to raise his [ineffective assistance of trial counsel claim]." Yet Crocker fails to establish why he was unable to obtain the newly discovered evidence before filing his first or third PCRA petitions. His failure to show cause prevents us from considering his procedurally defaulted ineffective assistance of counsel claim.

█ Crocker also fails to establish a fundamental miscarriage of justice to excuse his procedural default. In order to show a fundamental miscarriage of justice, Crocker must show that "the constitutional violation has probably resulted in the conviction of one who is actually innocent," such that "no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Even if the new evidence were to prove that Crocker did not rent the motel room before the murder, it does not follow that he and his gang members did not meet and agree to a criminal objective prior to the murder. And even if Crocker did not register at the motel before the murder, other members of his gang could have registered at the motel and rented the room. Other corroborating evidence, including the fact that Crocker was armed, pointed his gun at Do–Work's head, and pulled the trigger (at which point the firing mechanism jammed), shows that the jury had sufficient evidence to convict Crocker regardless of when he rented the motel room. Given Crocker's failure to show a fundamental miscarriage of justice, we cannot consider his procedurally defaulted ineffective assistance of counsel claim.

### B.

Crocker next asserts that the trial court's jury instruction on transferred intent violated his right to due process by permitting the jury to convict him of first-degree murder without finding beyond a reasonable doubt that Crocker had the specific intent to kill. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). A "jury instruction that omits or materially misdescribes an essential element of an offense as defined by state law relieves the state of its obligation to prove facts constituting every element of an offense beyond a reasonable doubt, thereby violating the defendant's federal due process rights." *Smith v. Horn,* 120 F.3d 400, 415 (3d Cir.1997).

"It is well-settled that under Pennsylvania law a defendant cannot be convicted of first-degree murder as an accomplice 'unless the Commonwealth proves that he harbored the specific intent to kill.'" *Goldblum v. Klem*, 510 F.3d 204, 236 (3d Cir.2007) (quoting *Smith*, 120 F.3d at 410). "Pursuant to the doctrine of transferred intent, the intent to murder may be transferred where the person actually killed is not the intended victim." *Pennsylvania v. Jones*, 590 Pa. 202, 912 A.2d 268, 279 (2006) (citing 18 Pa. Cons.Stat. Ann. § 303(b)(1) ("intentionally or knowingly causing a particular result" can be found if "the actual result differs from that designed or contemplated ... only in the respect that a different person ... is injured or affected")). When evaluating the jury instruction, "we focus initially on the language that is claimed to be erroneous, but we must view this portion of the instructions in the context of the charge as a whole." *Bronshtein v. Horn*, 404 F.3d 700, 710 (3d Cir.2005) (internal citation and quotation omitted).

Crocker argues that the trial court erred in its jury instruction, allowing him to be convicted of first-degree murder even though he did not have the specific intent to kill. He submits that when co-conspirator Corleone shot and killed Clark, Corleone's intent was not transferred because Clark was not a potential target of the conspiracy. We reject Crocker's argument because the jury instruction as a whole was proper. After the trial court explained "[f]irst-degree murder is a murder in which the killer has the specific intent to kill," it correctly stated that the jury must first consider the shooter's specific intent to kill based on either an agreement "to kill[ ] somebody" or the "conscious decision, I'm going to shoot this person" at the scene of the murder. Then, the trial court stated that Crocker's specific intent to kill could be found if "the agreement was made at the motel to kill" or if at the murder scene he was an "accomplice ... sharing that same intent" to kill somebody. It also accurately described the doctrine of transferred intent when it told the jury that "[i]f you intended to kill somebody and you fired shots and you end up causing somebody else's death, that specific intent that you had transfers over and applies to the person who was actually killed." This instruction, taken together as a whole, indicates that Crocker could not have been convicted for first-degree murder without the specific intent to kill. Even if he did not agree or act as an accomplice to kill Clark specifically, he must have agreed or acted as an accomplice to kill someone, such that the specific intent could transfer to the actual victim, Clark.

 Crocker contends that he should not be held responsible for Corleone's actions because Corleone was acting as a free agent and entirely separate from Crocker when he shot Clark, who lacked any relation to Do–Work or the Gods. The trial court addressed this by explicitly discussing the possibility that a passage of time or intervening events could lead to a conclusion that the murder was independent of the original conspiracy. It advised the jury to "look at the gap ... how far was [the murder] removed in time, how far was it removed in distance, how far was it removed in terms of who participated, and do you find that to be a separate and distinct act from what happened back at the dice game" in order to determine whether Crocker was "part of an agreement of conspiracy in regard to the shooting" of Clark. The trial court's instruction sufficiently charged the jury to ensure that Crocker was not convicted if the jury was persuaded the murder was separate and independent from the conspiracy. Because the overall jury instruction was

proper, the District Court did not err in denying Crocker's petition for habeas corpus.

IV.

For the foregoing reasons, we will affirm the District Court's order.