J-S06023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYSHEEM  CROCKER | |
| Appellant | No. 346 MDA 2013 |

Appeal from the PCRA Order January 22, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0000186-1998

BEFORE:  LAZARUS, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 01, 2014**

Tysheem Crocker appeals from the order entered January 22, 2013, in the Court of Common Pleas of York County, that denied his fourth petition for relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq*.  In 1999, a jury convicted Crocker of murder in the first degree and conspiracy, and the trial court sentenced him to an aggregate term of life imprisonment.  In this appeal, Crocker contends the PCRA court erred in rejecting the recantation evidence of Commonwealth witness, Danny Steele, as not credible.  Based upon the following, we affirm, albeit on the basis that the petition is untimely. [1]

_____

[1] **See Commonwealth v. Fisher**, 870 A.2d 864, 870 n.11 (Pa. 2005) (appellate court may affirm the decision of the PCRA court if there is any basis on the record to support the PCRA court's action, even if the appellate court relies on a different basis in its decision to affirm).

The background of this case has been summarized by this Court in previous decisions:

[Crocker] and Melvin Bethune were members of a gang in the York, Pennsylvania, area called "The Cream Team." Also in the York area was a rival gang called "The Gods." On October 5, 1997, following a dispute between the two groups, [Crocker] and Bethune traveled from York to New York to recruit manpower in order to retaliate against members of The Gods. The motivation for the retaliation was that members of The Gods had assaulted Bethune earlier that day.

[Crocker] and Bethune returned from New York with three individuals, including a man named "Corleone." This group and fellow Cream Team member Danny Steele ("Steele") went to the Super 8 Motel in York to plan the assault. The men decided they would shoot "Do-Work," who was the head of The Gods and whomever was with him. They planned to attack The Gods at its usual hangout on Maple Street.

[Crocker] and the others left the motel and drove to Maple Street. They parked their car and entered a home on Maple Street where they had stored guns. They retrieved their guns and proceeded to a corner where they had been advised members of The Gods were playing dice. Do-Work was playing dice along with a number of people including Raymond Clark ("Clark.")

[Crocker] and his co-conspirators approached. [Crocker] drew a gun on Do-Work and stated, "What's up now, yo?" N.T. Trial, 1/11/99, at 54. [Crocker] attempted to fire his gun at Do-Work, but it jammed. Immediately thereafter, other members of The Cream Team began firing at the people playing dice. The dice players ran, and [Crocker's] group chased them.

Steele, Corleone, and another unnamed co-conspirator chased Clark. Corleone shot Clark twice, fatally wounding him. Do-Work escaped. [Crocker], Steele, and Bethune were all identified by witnesses as having been involved in the shootings and were arrested. Steele agreed to testify for the Commonwealth in return for unspecified consideration in the criminal proceedings against him. Bethune went to trial with

- 2 -

[Crocker] for Clark's murder and was also found guilty of first-degree murder and conspiracy.

***Commonwealth v. Crocker,*** 750 A.2d 366 [483 MDA 1999] (Pa. Super. 1999) (unpublished memorandum, at 1-3), *appeal denied*, 761 A.2d 548 (Pa. 2000).

At trial, [Crocker] testified in his own defense as follows. He has been friends with Steele and his co-defendant, Bethune, for at least 10 years. He was part of a group called "the Cream Team," but they were not a gang. Earlier in the day on October 5, 1997, The Gods surrounded a house where the Cream Team was staying. [Crocker] ran out of the back of the house because The Gods were carrying guns. Later, Bethune stated that he had been attacked from behind, and that he did not see who did it. [Crocker] stated that he had an idea who it was, and that he was going to talk to Do-Work to get rid of the problem. He and Bethune drove to New York City, went shopping for approximately one hour on Canal Street, and arrived back in York at approximately 10:00 or 10:30 that night. In total, [Crocker] spent between six and eight hours on the road to do one hour of shopping.

When [Crocker] arrived back in York, Steele told him that Steele was having problems with Do-Work. Steele was very agitated, and said that he had guns in a third party's house. [Crocker] stated that he could talk to Do-Work without guns. Nevertheless, he retrieved a gun from the house and approached Do-Work. Do-Work walked toward [Crocker], and they met on a corner. [Crocker] did not see anyone else during his conversation with Do-Work. A few words were exchanged between [Crocker] and Do-Work, but [Crocker] did not draw a gun. [Crocker] heard gunshots from an unknown source, ran away, and left the gun near a fence. At first, [Crocker] stated that he knew the gun was broken as he approached Do-Work, but later he testified that he did not know the gun was broken until after he ran away from the gunshots. At one point, [Crocker] began to say that the gun "jammed," but later he stated that he simply knew the gun was broken. He did not go to a motel before this incident took place. He did, however, go to a motel after midnight on the night of the shooting.

- 3 -

***Commonwealth v. Crocker***, 809 A.2d 954 [1392 MDA 2001] (Pa. Super. 2002) (unpublished memorandum) (record citations omitted).

Following the imposition of sentence, Crocker perfected a direct appeal. This Court affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied his petition for allowance of appeal. ***Commonwealth v. Crocker, supra,*** 750 A.2d 366 [483 MDA 1999] (Pa. Super. 1999), *appeal denied*, 761 A.2d 548 (Pa. 2000).

On September 14, 2000, Crocker filed a *pro se* PCRA petition. Counsel was appointed, and an evidentiary hearing was held. On March 2, 2001, Crocker's PCRA petition was denied. Crocker's counsel failed to appeal, and, thereafter, upon Crocker's motion, the court granted him leave to file an appeal *nunc pro tunc*. However, counsel once again did not file the appeal, and Crocker then filed a successful second PCRA petition, resulting in the appointment of new counsel, and the perfection of the appeal. This Court affirmed the PCRA court's denial of relief, and Crocker did not file a petition for allowance of appeal to the Pennsylvania Supreme Court. ***Commonwealth v. Crocker, supra***, 809 A.2d 954 [1392 MDA 2001] (Pa. Super. 2002) (unpublished memorandum).

On May 15, 2003, Crocker filed his third PCRA petition. On June 11, 2003, the PCRA court found that the petition was untimely and dismissed it without a hearing. On May 11, 2004, this Court affirmed the dismissal of Crocker's PCRA petition, and the Pennsylvania Supreme Court subsequently

denied Crocker's petition for allowance of appeal. ***Commonwealth v. Crocker***, 855 A.2d 129 [1104 MDA 2003] (Pa. Super. 2004) (unpublished memorandum), *appeal denied*, 868 A.2d 1197 (Pa. 2005).

In the meantime, Crocker timely filed a petition for writ of *habeas corpus* in the United States District Court for the Middle District of Pennsylvania on September 29, 2003. On May 24, 2004, the District Court stayed his *habeas corpus* petition to allow Crocker to exhaust state court review of his claims. On December 9, 2008, the District Court denied Crocker's petition for *habeas corpus*. ***Crocker v. Klem***, Civ. No. 3:CV-03-1718 (M.D. Pa. Dec. 9, 2008). Crocker appealed the District Court's order, and a panel of the United States Court of Appeals for the Third Circuit issued a non-precedential opinion affirming the District Court. ***Crocker v. Klem***, 450 Fed. Appx. 136 (3d Cir. Pa. 2011).

Crocker filed this fourth PCRA petition on August 20, 2012, alleging after-discovered evidence, namely, the recantation evidence of Commonwealth witness, Danny Steele, and attaching Steele's affidavit. Specifically, Steele's affidavit states, in relevant part, he never saw Crocker put a gun to Do-Work's head and pull the trigger but rather that scenario was invented by the district attorneys, who pressured him to give false testimony. ***See*** Crocker's PCRA Petition, 8/20/2012, Exhibit B (Steele's July 12, 2012 Affidavit). Counsel was appointed, and that appointment was later vacated to allow present counsel to enter his appearance. Following a

hearing on January 22, 2013, the PCRA court determined Steele's recantation testimony was not credible, and denied PCRA relief. This appeal followed.[2]

Our standard of review is well settled:

On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error. ***Commonwealth v. Breakiron,*** 566 Pa. 323, 781 A.2d 94, 97 n.4 (Pa. 2001). A second or subsequent request for PCRA relief will not be entertained unless the petitioner presents a strong *prima facie* showing that a miscarriage of justice may have occurred. ***Commonwealth v. Carpenter,*** 555 Pa. 434, 725 A.2d 154, 160 (Pa. 1999). The PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a petition if it is not timely filed. ***See, e.g., Commonwealth v. Beasley,*** 559 Pa. 604, 741 A.2d 1258, 1261 (Pa. 1999); ***Commonwealth v. Fahy,*** 558 Pa. 313, 737 A.2d 214, 222 (Pa. 1999); ***Commonwealth v. Peterkin,*** 554 Pa. 547, 722 A.2d 638, 641 (Pa. 1998). It is the petitioner's burden to allege and prove that one of the timeliness exceptions applies. ***See Beasley,*** at 1261.

***Commonwealth v. Abu Jamal***, 941 A.2d 1263, 1267–1268 (Pa. 2008), *cert. denied*, 555 U.S. 916 (2008).

Preliminary to our review, we must address the threshold issue of whether Crocker's present PCRA petition was timely filed, as the timeliness of the PCRA petition is jurisdictional. ***Commonwealth v. Taylor***, 67 A.3d 1245, 1248 (Pa. 2013), *cert. denied*, ____ U.S. ____ (June 2, 2014). We need

_____

[2] Crocker timely complied with the PCRA court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

not recite the PCRA timeliness standards applicable to this case,[3] but simply note that for this fourth PCRA petition to be considered timely, and thus confer jurisdiction, Crocker must plead and prove one of the statutory exceptions to the PCRA's one year rule.[4]

In this case, as Crocker's petition alleges recantation evidence of the Commonwealth's witness, Danny Steele, his claim implicates the unknown facts exception. **See** 42 Pa.C.S. § 9545(b)(ii). This exception requires a petitioner to plead and prove that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." **Id.** Furthermore, a PCRA petition invoking one of these statutory exceptions must "be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. §

_____

[3] This Court discussed the PCRA's time requirements in Crocker's previous PCRA appeal:

> Presently, [Crocker's] judgment of sentence became final on or about December 5, 2000, after the Supreme Court denied [Crocker's] petition for allowance of appeal and the time in which to seek certiorari with the United States Supreme Court expired. **Commonwealth v. Owens**, 718 A.2d 330, 331 (Pa. Super. 1998). Thus, in order to be timely, a PCRA petition would have to have been filed by December 5, 2001.

**Commonwealth v. Crocker**, 855 A.2d 129 [1104 MDA 2003] (Pa. Super. 2004) (unpublished memorandum), *appeal denied*, 868 A.2d 1197 (Pa. 2005).

[4] The PCRA's three exceptions are: governmental interference, unknown facts, and newly recognized constitutional right. 42 Pa.C.S. § 9545(b)(1)(i), (ii), and (iii).

9545(b)(2). To evaluate whether Crocker's petition satisfies this exception, a discussion of the recantation evidence of Danny Steele proffered by Crocker is necessary.

At Crocker's trial, Steele testified for the Commonwealth in exchange for lenient treatment in his own case. Steele testified that he, Crocker, and several other co-conspirators met at a motel on the evening of the incident to discuss the murder of Do-Work. N.T., 1/11–15/99, at 251–259. Steele also stated that Crocker, after exchanging words with Do-Work, put a gun to Do-Work's head and attempted to fire, but the gun jammed. *Id.* at 265.

In his first PCRA petition, Crocker sought PCRA relief based upon various claims, including Steele's recantation of his trial testimony that Crocker and others had met at a motel to plan the armed confrontation. This Court summarized Steele's recantation testimony at the evidentiary hearing that followed:

> In rather roundabout fashion, Steele stated at the PCRA hearing that some of his trial testimony was true but that other elements were embellished to show that [Crocker] had the specific intent to kill. N.T., 3/2/2001, at 46-67. According to Steele, his own counsel indicated that these embellishments would help him to receive a more lenient sentence on his own conspiracy charge. *Id.* at 46-56. For example, Steele testified that during the meeting at the motel, he did not believe that [Crocker] and his associates were going to commit murder; rather, he thought they would simply talk out the problem with The Gods. *Id.* at 50.

*Commonwealth v. Crocker*, 809 A.2d 954 [1392 MDA 2001] (Pa. Super. 2002) (unpublished memorandum, at 16–17) (record citations omitted). The PCRA court concluded Steele's testimony was "untrustworthy and not

sufficient to obtain a new trial," and this Court "adopted the PCRA court's reasoning as to why Steele's PCRA testimony was incredible." *Id.* at 17.

In his present PCRA petition, filed on August 20, 2012, Crocker attached the affidavit of Steele, dated July 12, 2012, which states, in relevant part, verbatim:

> I never seen Tysheem Crooker put a gun to do-work head and pull the trigger. that was all made up by the D.A. Thomas Kelly and BILL GRAFF, to make my testimony look better than it would have if I gave truthfull testimony.

Crocker's PCRA Petition, 8/20/2012, Exhibit B (Steele's July 12, 2012 Affidavit).[5]   Crocker's petition, however, offers no explanation for Crocker's failure to uncover Steele's latest revelation until 2012, but simply alleges that Crocker filed his petition within 60 days of learning of the new evidence, as required by 42 Pa.C.S. § 9545(b)(2) ("Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented."). *See* Crocker's PCRA Petition, 8/20/2012, at 2, ¶4.

---

[5] It bears mention that Steele's 2012 recantation occurred after the Third Circuit ruled in Crocker's federal *habeas corpus* action that "**[o]ther corroborating evidence, including the fact that Crocker was armed, pointed his gun at Do-Work's head, and pulled the trigger (at which point the firing mechanism jammed), shows that the jury had sufficient evidence to convict Crocker regardless of when he rented the motel room.**" *Crocker v. Klem*, 450 Fed. Appx. 136 (3d Cir. 2011) (non-precedential memorandum) (emphasis supplied).

At the March 2001 PCRA hearing, Steele was asked on cross examination, "Did you tell the truth [at Crocker's trial] or did you lie?" N.T., 3/2/2001, at 57. He responded. "I'm pretty sure I did both." ***Id.*** In light of Steele's willingness to provide recantation evidence at Crocker's 2001 PCRA hearing, there is no reason to conclude that Steele's latest revelation could not have been discovered in 2001 with the exercise of "due diligence." 42 Pa.C.S. § 9545(b)(ii).

In fact, at Crocker's January 22, 2013 PCRA hearing, Steele declared that he knew that Crocker never put a gun to Do-Work's head at the time of Crocker's 2001 PCRA hearing. At the 2013 hearing, during the cross examination of Steele, the following exchange occurred between Commonwealth's counsel and Steele:

Q. But do you recall, however, testifying at the 2001 PCRA hearing before this Honorable Judge, is that correct?

A. Yes, I do remember that.

Q. And at the time that you testified before this Judge at that 2001 PCRA hearing, did you know with substantial certainty that the testimony that you gave in 1999, the fact that Tysheem Crocker had a gun, pulled it out, put it to Do-Works head, pulled the trigger and it jammed, that testimony was false?

A. Yes, I knew that.

****

Q. And at the time that you testified, did you also know that the testimony you gave at the 1999 trial, that Tysheem Crocker had a gun, pulled it out, put it to Do-Works head, pulled the trigger

- 10 -

and it jammed, that that testimony, too was not true, that it was false?

A. Yes. Yes. Yes.

N.T., 1/22/2013, at 58, 60.

Steele was then questioned why he did not provide his present recantation testimony at the 2001 PCRA hearing:

Q: And you at that time never offered that information to the Court when you were testifying before this Judge in 2001, is that correct?

A: I'm not pretty sure—I don't even think I was asked it, that question. I think it was more focused on the hotel pre-plan of plotting the murder, to prove that we did have the knowledge that we was going to kill Can-Do, so I was at that time focused on telling the Courts that we did not pre-plan to kill anyone, and that was what the whole case was about at the time, at that hearing, was asked—if it was asked, that I would have stated it. I just follow the rules of what the hearing was about.

*Id.* at 60–61.

In this case, nothing prevented Crocker from questioning Steele at the 2001 PCRA hearing regarding his trial testimony that Crocker put a gun to Do-Work's head and pulled the trigger before another man shot the victim. Therefore, on this record, we find that Crocker's lack of due diligence bars assertion of Steele's recent recantation as satisfying the unknown facts exception, 42 Pa.C.S. § 9545(b)(1)(ii), and the 60-day requirement of 42 Pa.C.S. § 9545(b)(2). *See Commonwealth v. Edminston*, 65 A.3d 339, 350 (Pa. 2013), *cert. denied*, 134 S. Ct. 639 (U.S. 2013) (finding PCRA claim untimely where appellant did not address why he was unable to obtain

certain statements and present them at first PCRA hearing); ***Commonwealth v. Kubis***, 808 A.2d 196, 201 (Pa. Super. 2002), *appeal denied*, 813 A.2d 839 (Pa. 2002) (Section 9545(b)(1)(ii) not satisfied where the petitioner was aware of identity of individual during trial and could have earlier discovered favorable testimony by exercising due diligence). ***See also Commonwealth v. Lambert***, 57 A.3d 645 (Pa. Super. 2012), *appeal denied*, 67 A.3d 795 (Pa. 2013) (explaining focus of Section 9545(b)(1)(ii) is on newly discovered facts, not on newly willing source for previously known facts). Therefore, we conclude Crocker's petition is untimely.

In any event, assuming the petition could even be considered timely, this Court would not disturb the conclusion of the PCRA court. Regarding claims of recantation under the PCRA, this Court has explained:

Section 9543(a)(2)(vi) of the PCRA provides for post-conviction relief when a petitioner can prove a claim of newly discovered evidence. In order to succeed with this claim, "the petitioner must establish by a preponderance of the evidence that: (1) the evidence has been discovered after the trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) such evidence is not cumulative; (3) the evidence is not being used solely to impeach credibility; and (4) such evidence would likely compel a different verdict."

Our Supreme Court has summarized appellate consideration of a claim involving recanted testimony as follows:

The well-established rule is that an appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion. …. Recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true.

> There is no less reliable form of proof, especially when it involves an admission of perjury.

*Commonwealth v. Loner*, 836 A.2d 125, 135 (Pa. Super. 2003), *appeal denied*, 852 A.2d 311 (Pa. 2004) (citations omitted).

Here, the PCRA court explained its conclusion as follows:

> We do not find the testimony of Danny Steele to be credible. We find the testimony of Judge Kelley and Bill Graff to be credible. We note that Danny Steele recanted previously. We didn't believe him then, and that ruling was affirmed on appeal. He's now come back several years later and added something, which conveniently just happens to be the main stumbling block to relief, and we believe he's now added that in a manner which is not credible either, and we specifically disbelieve it, and therefore there's no basis for relief.

N.T., 1/22/2013, at 131.

Mindful that credibility determinations rest within the trial court's sound discretion, we would find that the PCRA court's assessment reveals no abuse of discretion. The PCRA court considered its prior credibility determination regarding Steele's 2001 PCRA testimony as "a factor in not believing his second attempt at recanting his testimony." PCRA Court Opinion, 4/12/2013, at 2. Moreover, the PCRA court reasoned that Steele's new testimony in which he "added something which … happens to be the main stumbling b[lo]ck to relief," was another factor that entered into its consideration. *Id.* The PCRA court further considered Steele's credibility in the light of Crocker's arguments concerning (1) the "corroborat[ing]" preliminary testimony of the intended victim, Do-Work, (2) the "corroborating" effect of after discovered evidence of the motel check-in

clerk, presented at Crocker's co-defendant's PCRA hearing, and (3) the improvement of Steele's testimony "during the course of trial." ***Id.*** at 3–4. The PCRA court rejected these arguments, explaining:  (1) it did not find Do-Work's preliminary testimony to be credible nor fully corroborative of Steele's recantation, (2) it did not find the motel check-in clerk's testimony to be significant enough to have any weight regarding Steele's credibility, and (3) it did not find "[Crocker's] conclusion that Steele's testimony for the [C]ommonwealth improved during the course of trial [to be] enough by itself to conclude that Steele testified correctly in the PCRA hearing that his testimony was induced by improper activity by the prosecutor." ***Id.*** at 4.

The PCRA court provided a cogent explanation why it did not find Steele's recantation testimony to be credible, and committed no abuse of discretion.  Accordingly, had Crocker's petition been timely, we would conclude that his after discovered evidence claim fails on the merits. ***See Commonwealth v. Loner, supra*** at 135 ("A prerequisite to [PCRA] relief [upon a claim of after discovered evidence] is that "the evidence upon which the relief is sought must be credible to the trial court.") (citation omitted).

Based upon the foregoing, we conclude that Crocker's PCRA petition is untimely and does not meet any exception to the PCRA timeliness requirements.  We therefore affirm the order of the PCRA court denying PCRA relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/1/2014</u>