J-S41001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYSHEEM CROCKER | : | |
| | : | |
| Appellant | : | No. 1539 MDA 2019 |

Appeal from the PCRA Order Entered August 23, 2019,
in the Court of Common Pleas of York County,
Criminal Division at No(s): CP-67-CR-0000186-1998.

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED OCTOBER 20, 2020**

Tysheem Crocker appeals *pro se* from the order denying his fifth petition filed pursuant to the Post Conviction Relief Act. 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In a prior memorandum, this Court summarized the pertinent facts as follows:

> [Crocker] and Melvin Bethune were members of a gang in the York, Pennsylvania, area called "The Cream Team." Also in the York area was a rival gang called "The Gods." On October 5, 1997, following a dispute between the two groups, [Crocker] and Bethune traveled from York to New York to recruit manpower in order to retaliate against members of The Gods. The motivation for the retaliation was that members of The Gods had assaulted Bethune earlier that day.

---

[*] Retired Senior Judge assigned to the Superior Court.

[Crocker] and Bethune returned from New York with three individuals, including a man named "Corleone." This group and fellow Cream Team member Danny Steele ("Steele") went to the Super 8 Motel in York to plan the assault. The men decided they would shoot "Do-Work," who was the head of The Gods and whomever was with him. They planned to attack The Gods at its usual hangout on Maple Street.

[Crocker] and the others left the motel and drove to Maple Street. They parked their car and entered a home on Maple Street where they had stored guns. They retrieved their guns and proceeded to a corner where they had been advised members of The Gods were playing dice. Do-Work was playing dice along with a number of people including Raymond Clark ("Clark.")

[Crocker] and his co-conspirators approached. [Crocker] drew a gun on Do-Work and stated, "What's up now, yo?" N.T. Trial, 1/11/99, at 54. [Crocker] attempted to fire his gun at Do-Work, but it jammed. Immediately thereafter, other members of The Cream Team began firing at the people playing dice. The dice players ran, and [Crocker's] group chased them.

Steele, Corleone, and another unnamed co-conspirator chased Clark. Corleone shot Clark twice, fatally wounding him. Do-Work escaped. [Crocker], Steele, and Bethune were all identified by witnesses as having been involved in the shootings and were arrested. Steele agreed to testify for the Commonwealth in return for unspecified consideration in the criminal proceedings against him. Bethune went to trial with [Crocker] for Clark's murder and was also found guilty of first-degree murder and conspiracy.

*Commonwealth v. Crocker,* 106 A.3d 149 (Pa. Super. 2014), unpublished

memorandum, at 1-3 (citation omitted).

This Court also summarized Crocker's trial testimony as follows:

At trial, [Crocker] testified in his own defense as follows. He has been friends with Steele and his co-defendant, Bethune, for at least 10 years. He was part of a group called "the Cream Team," but they were not a gang. Earlier in the day on October 5, 1997, The Gods surrounded a house where the Cream Team was staying. [Crocker] ran out of the back of the house because The Gods were carrying guns. Later, Bethune stated that he had been attacked from behind, and that he did not see who did it. [Crocker] stated that he had an idea who it was, and that he was going to talk to Do-Work to get rid of the problem. He and Bethune drove to New York City, went shopping for approximately one hour on Canal Street, and arrived back in York at approximately 10:00 or 10:30 that night. In total, [Crocker] spent between six and eight hours on the road to do one hour of shopping.

When [Crocker] arrived back in York, Steele told him that Steele was having problems with Do-Work. Steele was very agitated, and said that he had guns in a third party's house. [Crocker] stated that he could talk to Do-Work without guns. Nevertheless, he retrieved a gun from the house and approached Do-Work. Do-Work walked toward [Crocker], and they met on a corner. [Crocker] did not see anyone else during his conversation with Do-Work. A few words were exchanged between [Crocker] and Do-Work, but [Crocker] did not draw a gun. [Crocker] heard gunshots from an unknown source, ran away, and left the gun near a fence. At first, [Crocker] stated that he knew the gun was broken as he approached Do-Work, but later he testified that he did not know the gun was broken until after he ran away from the gunshots. At one point, [Crocker] began to say that the gun "jammed," but later he stated that he simply knew the gun was broken. He did not go to a motel before this incident took place. He did, however, go to a motel after midnight on the night of the shooting.

*Crocker*, *supra*, unpublished memorandum at 3.

On January 15, 1999, the jury convicted Crocker of first-degree murder and criminal conspiracy. That same day, the trial court imposed the mandatory life in prison sentence for the murder conviction, and a concurrent term of twenty to forty years for the criminal conspiracy conviction. Crocker

- 3 -

filed a timely appeal. In an unpublished memorandum filed on December 6, 1999, this Court affirmed Crocker's judgment of sentence and our Supreme Court denied his petition for allowance of appeal on December 5, 2000. *Commonwealth v. Crocker*, 750 A.2d 366 (Pa. Super. 1999), *appeal denied*, 761 A.2d 548 (Pa. 2000).

On September 14, 2000, Crocker filed a timely *pro se* PCRA, in which he raised claims of ineffectiveness involving trial and PCRA counsel. After an evidentiary hearing, the PCRA court dismissed Crocker's PCRA petition on March 2, 2001.

Crocker's PCRA counsel failed to file a direct appeal on Crocker's behalf. Thereafter, Crocker was granted leave to file an appeal *nunc pro tunc*. However, PCRA counsel once again did not file the appeal. After Crocker filed a successful second PCRA petition, however, the PCRA court appointed new counsel, who promptly filed an appeal to this Court. In that appeal, Crocker raised several claims of ineffectiveness on the part of trial and PCRA counsel, as well as a claim that the PCRA court erred by failing to grant a new trial based on Steele's "recantation" testimony at the PCRA hearing. In 2002, we described the PCRA court's treatment of this issue as follows:

> In rather roundabout fashion, Steele stated at the PCRA hearing that some of his trial testimony was true but that other elements were embellished to show that [Crocker] had the specific intent to kill. According to Steele, his own counsel indicated that these embellishments would help him receive a more lenient sentence on his own conspiracy charge. For example, Steele testified that during the meeting at the motel, he did not believe that [Crocker] and

- 4 -

his associates were going to commit murder; rather, he thought they would simply talk out the problem with The Gods.

The PCRA court refused to order a new trial. The court reasoned that Steele's testimony was not substantially different from his trial testimony, and that any "recantation" at the PCRA hearing was motivated by [Steele's] motivation to protect himself from retaliation at the hands of [Crocker] and [Crocker's] friends. The court also noted that Steele told the whole truth at trial, rather than the whitewashed version he wanted to tell, because the only way he would obtain a favorable deal with the Commonwealth was to tell all of the incriminating details to the jury. Finally, the court noted that the only real difference between Steele's trial testimony and his PCRA testimony was the issue of whether [Crocker] discussed the murders beforehand at the hotel. According to the court, the revised testimony would not have changed the outcome [of Crocker's trial] in light of the circumstantial evidence that [Crocker] traveled to New York and obtained reinforcements, and that they armed themselves before confronting The Gods. Thus, the court found that Steele's PCRA testimony was untrustworthy and not sufficient to obtain a new trial.

*Commonwealth v. Crocker*, 809 A.2d 954 (Pa. Super. 2002), unpublished memorandum at 16-17 (citations omitted). Our review of the record supported the PCRA court's credibility determination, and because Crocker's ineffectiveness claims failed, we affirmed the PCRA court's order denying Crocker post-conviction relief. Crocker did not seek further review.

On May 15, 2003, Crocker filed his third PCRA petition in which he raised several claims, including his assertion that he was entitled to a new trial based on newly discovered evidence that would conclusively establish he did not rent a hotel room prior to the confrontation that resulted in Clark's death. By order entered June 11, 2003, the PCRA court dismissed this petition as untimely

filed. Crocker filed an appeal to this Court. In an unpublished memorandum filed on May 1, 2004, we agreed that Crocker's third PCRA petition was untimely, and concluded that Crocker failed to meet his burden with regard to the newly-discovered evidence exception to the PCRA's time bar. *Commonwealth v. Crocker*, 855 A.2d 129 (Pa. Super. 2004). On January 20, 2005, our Supreme Court denied Crocker's petition for allowance of appeal. *Commonwealth v. Crocker*, 868 A.2d 1197 (Pa. 2005).

Shortly after filing his third PCRA petition, Crocker also sought relief in the federal courts, ultimately ending when a panel of the United States Court of Appeals for the Third Circuit issued a non-precedential opinion affirming the District Court's denial of Crocker's *habeas corpus* petition. *See Crocker v. Klem*, 450 Fed. Appx. 136 (3d Cir. Pa 2011).

On August 20, 2012, Crocker filed his fourth PCRA petition in which he alleged newly-discovered evidence of Steele's recantation of his trial testimony. Crocker attached Steele's affidavit to the petition, in which Steele states that he never saw Crocker put a gun to Do-Work's head and pull the trigger but rather that scenario was invented by the district attorneys, who pressured him to give false testimony, as well as a claim that the PCRA court erred by failing to grant a new trial based on Steele's "recantation" testimony. After a change of counsel and a January 22, 2013 hearing, the PCRA court determined that Steele's recantation testimony was not credible, and the court denied relief.

Crocker filed a timely appeal to this Court. We first agreed with the PCRA court's determination that Crocker's fourth petition was untimely filed. We then explained that Crocker could not establish he acted with due diligence in discovering this "new" evidence because he offered no explanation for his failure to uncover Steele's latest recantation until 2012. Indeed, at the PCRA hearing Steele conceded that he knew at the time that he testified in support of Crocker's first PCRA hearing in 2001, that his trial testimony in which he stated Crocker pointed a gun at Do-work's head was false. Thus, we concluded that "Crocker's lack of due diligence bars assertion of Steele's recent recantation as satisfying the unknown facts exception" to the PCRA's time bar.

When affirming the PCRA court's dismissal of Crocker's fourth petition as untimely, we further stated that, even if the petition was timely, the record supports the PCRA court's determination that Steele's most recent recantation was unworthy of belief. We explained:

> Mindful that credibility determinations rest within the [PCRA] court's sound discretion, we would find that the PCRA court's assessment reveals no abuse of discretion. The PCRA court considered its prior credibility determination regarding Steele's 2001 PCRA testimony as a factor in not believing his second attempt at recanting his testimony. Moreover, the PCRA court reasoned that Steele's new testimony in which he added something which happens to be the main stumbling block to relief, was another factor that entered into its consideration. The PCRA court further considered Steele's credibility in light of Crocker's arguments concerning (1) the corroborating preliminary hearing testimony of the intended victim, Do-Work, (2) the "corroborating" effect of after discovered evidence of the

motel check-in clerk, presented at Crocker's co-defendant's PCRA hearing, and the improvement of Steele's testimony during the course of trial. The PCRA court rejected these arguments, explaining: (1) it did not find Do-Work's preliminary testimony to be credible nor fully corroborative of Steele's recantation, (2) it did not find the motel check-in clerk's testimony to be significant enough to have any weight regarding Steele's credibility, and (3) it did not find Crocker's conclusion that Steele's testimony for the Commonwealth improved during the course of trial to be enough by itself to conclude that Steele testified correctly in the PCRA hearing that his testimony was induced by improper activity by the prosecutor.

**Crocker**, 106 A.3d 149 (Pa. Super. 2014), unpublished memorandum at 13-14 (citations omitted). Thus, because Crocker's fourth PCRA petition was untimely and did not meet any exception to the PCRA's timeliness requirements, we affirmed the PCRA court's order denying Crocker post-conviction relief. On February 25, 2015, our Supreme Court denied Crocker's petition for allowance of appeal. **Commonwealth v. Crocker**, 112 A.3d 649 (Pa. 2015).

On April 30, 2015, Crocker filed the PCRA petition at issue, his fifth. In this petition, Crocker asserted that he established an exception to the PCRA's time bar in the form of the newly discovered testimony of Kendo "Do-Work" Hemphill which corroborated Danny Steele's recantation that Crocker did not put a gun to Do-Work's head and attempt to fire it. On April 12, 2016, the PCRA Court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Crocker's fifth PCRA petition without a hearing because it was untimely filed, and because Crocker failed to establish a time-bar exception.

After the PCRA court granted Crocker an additional twenty days to respond, counsel entered her appearance on Crocker's behalf. On June 29, 2016, counsel filed Crocker's Rule 907 response. In addition, counsel requested an evidentiary hearing and sought leave to amend Crocker's petition.[1] The PCRA court scheduled an evidentiary hearing that was continued several times. On August 10, 2017, new counsel entered their appearance on Crocker's behalf. Ultimately, the PCRA court held an evidentiary hearing at which various witnesses testified, including Do-Work. After the hearing, the PCRA court requested that the parties file supporting briefs within thirty days following receipt of the hearing transcript.

Counsel filed Crocker's brief on November 6, 2017. After being granted two extensions, the Commonwealth filed its brief on February 12, 2018. Crocker filed a *pro se* reply brief on June 27, 2018. By order entered on August 23, 2019, the PCRA court dismissed Crocker's fifth petition. This *pro se* appeal followed.[2] The PCRA court did not require Pa.R.A.P. 1925 compliance.

Crocker now raises the following issues:

    **I.**    Did the [PCRA court] commit error, and abuse its discretion, by finding [Crocker's] claim was untimely and previously litigated because [Crocker's] attorney talked to [Do-Work] in 2013, and his newly discovered

---

[1] Although being granted an extension of time to do so, counsel failed to file an amended brief.

[2] Subsequently, Crocker's counsel was granted leave to withdraw.

testimony was similar to a 1998 transcript raised in 2013 at a hearing on [Crocker's] previous (4th) PCRA petition?

**II.** Does the record fail to support the PCRA court's finding that [Do-Work's] 2017 testimony is a recantation, and did the PCRA court commit legal error and abuse its discretion by applying a credibility standard applicable to recantations?

**III.** Did the PCRA court commit legal error by failing to assess the credibility of [Do-Work's] newly discovered testimony independently of the 4th PCRA court's finding that there was no credibility to the recantation of [Steele]?

**IV.** Did the PCRA court abuse its discretion by rejecting [Do-Work's] newly discovered testimony because [Do-Work] didn't show "emotion" and "animus" regarding his 20-years-bygone confrontation with [Crocker]?

**V.** Did the PCRA court abuse its discretion by failing to make credibility determinations of the testimony of Shameka Sanders and Omar Jennett?

**VI.** Did the PCRA court abuse its discretion by allowing its decision to be swayed by the court's own unfounded suspicion that there had been improper influence upon [Do-Work]?

Crocker's Brief at 5 (excess capitalization omitted; some formatting altered).

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

- 10 -

Before addressing the issues raised by Crocker, we must first determine if the PCRA court correctly concluded that his fifth petition was untimely. Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment is final unless the petition alleges, and the petitioner proves, that an exception to the time limitation for filing the petition, set forth at 42 Pa.C.S.A. sections 9545(b)(1)(i), (ii), and (iii), is met.[3] A PCRA petition invoking one of these statutory exceptions must be filed within 60 days of the date the claims could have been presented. 42 Pa.C.S.A. § 9545(b)(2).[4] Asserted exceptions to the time restrictions for a PCRA petition must be included in the petition, and may

_____

[3] The exceptions to the timeliness requirement are:

> (i) the failure to raise the claim previously was the result of interference of government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States.

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. §§ 9545(b)(1)(i), (ii), and (iii).

[4] Section 9545(b)(2) has since been amended to permit filings within one year of the date the claim could have been presented. Because Crocker filed the PCRA petition at issue in 2015, the shorter 60 day period applies.

not be raised for the first time on appeal. ***Commonwealth v. Furgess***, 149 A.3d 90 (Pa. Super. 2016).

Here, this Court has previously held that Crocker's judgment of sentence became final on December 5, 2000. ***See Crocker***, 855 A.2d 129 (Pa. Super. 2004), unpublished memorandum at 4. Because Crocker filed his fifth PCRA petition almost fifteen years later, it is patently untimely, unless Crocker has satisfied his burden of pleading and proving that one of the enumerated exceptions applies.

Crocker failed to prove the applicability of any of the PCRA's time-bar exceptions. As noted above, in his fifth PCRA petition, Crocker argued the newly-discovered testimony from Do-Work rendered his petition timely. According to Crocker, he could not discover Do-Work's whereabouts until 2012, and it took the intercession of a mutual friend to obtain the notarized affidavit upon which his 2017 PCRA hearing testimony was based. Crocker claims he filed his fifth petition within sixty days of receiving the affidavit.

With this claim, Crocker attempted to establish the PCRA's timeliness exception found at section 9545(b)(1)(ii).

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned of those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the

newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered evidence claim.

***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted).

In concluding that Crocker could not establish the timeliness exception, the PCRA court initially determined that Crocker could not establish due diligence because he was aware of Do-Work's statements in 2013, and his fourth PCRA petition was still pending before the PCRA court when he "discovered" the new evidence:

First, [Crocker] failed to file his claim within 60 days of discovering [Do-Work's] statements. . . . [Crocker] states in his petition that he became aware of [Do-Work's] potentially corroborating testimony in June 2012. [Crocker] recruited Shameka Sanders to visit [Do-Work] in New York the week of June 18-24, 2012, where she presented him the transcript from [Steele's] preliminary hearing [at which Do-Work testified]. Sanders and [Do-Work] then reached out to [Crocker's PCRA counsel]. While initial efforts failed, [PCRA counsel] was able to reach [Do-Work] prior to the hearing on [Crocker's] fourth PCRA petition held on January 22, 2013. [PCRA counsel] proceeded to raise [Do-Work's preliminary hearing] testimony in an effort to corroborate [Steele's] recantation. Hence, [Crocker] was aware of [Do-Work's] testimony prior to the hearing on January 22, 2013,

- 13 -

at the absolute latest. [Crocker] had no reason not to bring this claim earlier.

[Crocker] is incorrect in his assertion that he could not have filed a PCRA petition based on **Commonwealth v. Lark**, 746 A.2d 585, 588 (Pa. 2000). **Lark** clearly states that its holding does not preclude a [PCRA] court from granting leave to amend a PCRA petition that is currently pending before that court. [**Lark**, 746 A.2d at 494 n.2]. [Crocker's] calculation that [his fifth] PCRA [petition] could be filed within 60 days of his [third] PCRA petition being affirmed and the Supreme Court denying his petition for [allowance of] appeal is therefore incorrect. Instead, [Crocker] could have amended his [fourth] PCRA petition to include his claim involving [Do-Work] prior to the hearing. As such, [Crocker's] claim does not qualify under the newly-discovered evidence exception.

Rule 907 Notice, 4/12/16, at 2-3.

Our review of the record supports the PCRA court's conclusions.[5] Crocker's claim fails because Do-Work's affidavit and testimony constitutes only a "newly willing source of previously known facts." **Commonwealth v. Ward-Green**, 141 A.3d 527, 533 (Pa. Super. 2016) (citation omitted). Such a source does not qualify as a fact unknown to the petitioner. **Commonwealth v. Brown**, 111 A.3d at 176.

_____

[5] The PCRA court also found that, even if **Lark** rendered Crocker's newly-discovered evidence claim timely, the claim involving Do-Work's testimony "was raised and addressed previously during his most recent PCRA hearing on January 22, 2013." Rule 907 Notice, 4/12/16, at 3-4. The PCRA court expressly found Do-Work's preliminary hearing testimony lacked credibility. **Id.** at 4. In a footnote, the court further acknowledged that, although Do-Work's preliminary hearing testimony failed to include a specific statement that Crocker did not point a gun at Do-Work's head, at the 2013 PCRA hearing, PCRA counsel argued that Do-Work's testimony could be considered in this manner. **Id.** at 4 n.5.

- 14 -

The PCRA court further determined that, even if he had met a timeliness exception, Crocker would be unable to establish that the after-discovered evidence of Do-Work's testimony would have entitled him to relief in the form of a new trial.

To address the PCRA court's conclusion, we first note the test applied to after-discovered evidence. When discussing the test in the context of a PCRA appeal, our Supreme Court recently summarized:

> [W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

**Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

In addition, we note that credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. **See**, **e.g.**, **Small**, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely

- 15 -

compel a different verdict if a new trial is granted." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Id.*

Here, the PCRA court concluded that Crocker's proposed after-discovered evidence would not likely result in a different verdict if a new trial were granted, for several reasons, including the fact that Do-Work's testimony lacked credibility. After recounting Do-Work's testimony at the 2017 PCRA hearing, the PCRA court concluded:

> The sheer lack of animus, the ambivalence, and the nonchalance exhibited by [Do-Work] gives this Court great pause regarding [his] willingness or ability to truthfully recount the color of the sky. Assuming, for a moment, that [Crocker] did not point a firearm at [Do-Work], [Crocker] was nonetheless part of an armed vigilante group seeking vengeance against a rival gang of which [Do-Work] was the leader. Moreover per the Superior Court's statement of the case [in Crocker's direct appeal], [Do-Work] was the main target. [Do-Work's] seeming lack of emotion in his testimony does not square with the events of that fateful night. This emotional void, combined with [Do-Work's] inability or unwillingness to recall the victim, [his] lack of surety regarding his "friend" Shameka Sanders' name, [Do-Work's] changing answers regarding whether or not [Crocker] possessed a firearm on the night in question, and [Do-Work's] statement that he did not even wish to be present at the PCRA hearing leave this court confused as to whether [Do-Work] was accompanied into the courtroom by any nefarious motives. This confusion is immaterial. The Commonwealth adduced no actual evidence of a conspiracy between rival gangs to exchange favorable PCRA testimony for one another's members [although the Commonwealth did make this argument at the evidentiary hearing.] The

- 16 -

> inconsistencies of [Do-Work's] testimony and his demeanor are what matter. The sum of it all is that, for the reasons stated, this Court did not find [Do-Work] to be credible.

PCRA Court Opinion, 8/23/19, at 12-13.

Initially, we reiterate that, because the record supports the PCRA court's conclusion that Crocker failed to establish due diligence, we could affirm on this basis alone. **Brown**, **supra**. Nevertheless, our review of the record supports the PCRA court's conclusion that Crocker's after-discovered evidence was unworthy of belief, given Do-Work's demeanor, and the "overall strength of the evidence supporting [Crocker's] conviction." **Padillas**, **supra**. In rejecting Crocker's challenge to the sufficiency of the evidence supporting his first-degree murder conviction this Court stated:

> The Commonwealth presented extensive evidence that [Crocker] had knowledge of the specific crime. This evidence of prior knowledge includes a receipt from Super 8 Motel, the motel where Steele testified the group met to plan the killings. There is further testimony from Steele that [Crocker] traveled to New York specifically to recruit manpower to assist the group in this assault. Steele testified that he and his co-conspirator's, including [Crocker], planned to shoot Do-Work and anyone who was with him.
>
> The Commonwealth has likewise fulfilled the requirement that [Crocker] participated in the crime charged. The Commonwealth presented the testimony of several eyewitnesses who stated they saw [Crocker] approach Do-Work, draw and point a gun at Do-Work's head, and then pull the trigger only to have the gun jam. While [Crocker] did not pull the trigger of the gun which killed Clark, clearly his overt acts indicated that he was a participant in the overall conspiracy. Viewing the evidence in the light most favorable to the Commonwealth, we find that the evidence was sufficient to sustain the verdict.

***Commonwealth v. Crocker***, 755 A.2d 366 (Pa. Super. 1999), unpublished memorandum at 10-11. Although, throughout his brief, Crocker asserts multiple reasons why the PCRA court's credibility determination is faulty, Crocker's latest attempt to disturb the jury's verdict and obtain a new trial fails.

In sum, Crocker's fifth PCRA petition is untimely and he has not established a time-bar exception. Moreover, even if Crocker's fifth PCRA petition were considered timely, his after-discovered evidence would not entitle him to post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2020

- 18 -